UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DENNIS J. DONOGHUE, :
and MARK RUBENSTEIN,
:
Plaintiffs,
: OPINION & ORDER
-against-
: 23 Civ. 6400 (AT) (GWG)
JOHN ROSATTI, and
THE JOHN ROSATTI FAMILY TRUST :
Dated AUGUST 27, 2001,
:
Defendants,
:
and
:
BURGERFI INTERNATIONAL, INC.
:
Nominal Defendant.
---------------------------------------------------------------X

**GABRIEL W. GORENSTIEN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Dennis J. Donoghue and Mark Rubenstein ("Shareholder Plaintiffs"), who were shareholders of nominal defendant BurgerFi International, Inc. ("BurgerFi"), have moved under Federal Rule of Civil Procedure 17 for substitution of the bankruptcy trustee of BurgerFi as plaintiff.[1] For the reasons set forth below, the motion is granted.[2]

---

[1] See Motion to Substitute, filed Apr. 24, 2026 (Docket # 99) ("Mot"); Memorandum of Law in Support, filed Apr. 24, 2026 (Docket # 100) ("Mem."); Declaration of Daniel F. Dooley, filed Apr. 24, 2026 (Docket # 101) ("Dooley Decl."); Memorandum of Law in Opposition, filed May 22, 2025 (Docket # 103) ("Opp."); Reply Memorandum of Law in Support, filed June 8, 2026 (Docket # 106) ("Reply").

[2] A motion to substitute a party is a nondispositive pretrial matter for purposes of 28 U.S.C. § 636(b)(1)(A). E.g., Kumaran v. Nat'l. Futures Ass'n., 604 F. Supp. 3d 82, 84 n.1 (S.D.N.Y. 2022), adopted by, 2022 WL 3996962 (S.D.N.Y. Aug. 31, 2022).

I. BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The Shareholder Plaintiffs filed suit against defendants John Rosatti and The John Rosatti Family Trust Dated August 27, 2001, under § 16(b) of the Securities Exchange Act. See Complaint, filed July 24, 2023 (Docket # 1) ("Compl.") ¶ 1. Section 16(b) requires "owners of more than ten percent of a company's stock, to disgorge what are colloquially known as 'short-swing profits,' i.e., any profits made from buying and selling or selling and buying within a six-month period a security based on that company's stock." Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc., 906 F.3d 215, 219 (2d Cir. 2018) (citing 15 U.S.C. § 78p(b)). The complaint alleges that defendants owned more than 10% of BurgerFi. Compl. ¶ 6.

"Suits under 16(b) can be brought by the company that issues the relevant stock or, 'if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter,' by any 'owner of any security of the issuer.'" Klein, 906 F.3d at 219 (quoting 15 U.S.C. § 78p(b)). Here, the Shareholder Plaintiffs demanded that BurgerFi prosecute this suit; after receiving no response, they filed the complaint on July 24, 2023. See Compl. ¶¶ 8-9.

As related by the district judge:

> On September 11, 2024, BurgerFi filed a "Suggestion of Bankruptcy," which notified the Court and the parties that BurgerFi filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware, and, therefore, this action should be automatically stayed under Section 362(a) of the Bankruptcy Code. See ECF No. 69 (Suggestion of Bankruptcy). On November 18, 2024, the Court stayed this action pending BurgerFi's Chapter 11 proceedings. See ECF No. 80. On March 12, 2025, the Delaware Bankruptcy Court entered an order confirming a Chapter 11 plan of liquidation, which "cancelled and extinguished," as of March 17, 2025, "any share of common stock, preferred stock, or other equity interests" in BurgerFi. See BFI Plan Art. VI § 6.9(b); BFI Plan Ex. A ¶ 87; Notice of Effective Date at ¶ 2, ECF 91-3. On March 17, 2025, BurgerFi filed a Form 8-K with the Securities Exchange Commission, which announced that "upon the occurrence of the Effective Date, all existing equity interests of the Company were

> cancelled and extinguished without consideration in accordance with the terms of the [BFI] Plan." BFI 8-K at 2, ECF No. 91-4.
>
> On May 14, 2025, Shareholder Plaintiffs filed a letter-motion seeking to lift the stay . . . and to substitute Daniel F. Dooley, as the liquidating trustee for BurgerFi (the "Trustee"), as the Plaintiff in this action. Ltr. Mot., ECF No. 81.

Order, dated Mar. 27, 2026 (Docket # 98) ("Order on Reconsideration") at 2-3.

The Court granted the Shareholder Plaintiffs' motion to substitute — the same relief sought in the instant motion — and lifted the stay on May 19, 2025. See Order, dated May 19, 2025 (Docket # 82). On July 7, 2025, however, defendants moved for reconsideration of that Order. See Motion for Reconsideration, filed July 7, 2025 (Docket # 91). Defendants argued that the Court failed to consider "whether the BFI Plan rendered the Shareholder Plaintiffs' Section 16(b) claims moot, divesting this Court of subject matter jurisdiction to substitute the Trustee as Plaintiff in this action." Order on Reconsideration at 4-5.

On March 27, 2026, the district judge granted defendants' motion for reconsideration, recognizing that the Shareholder Plaintiffs' claims had been mooted. See id. at 6. As she stated:

> Here, the plain language of the BFI Plan states that "any share of common stock, preferred stock, or other equity interests" shall be "canceled and extinguished on the Effective Date," which was March 17, 2025. See BFI Plan Art. VI § 6.9(b); BFI Plan Ex. A ¶ 87; Notice of Effective Date at ¶ 2. Shareholder Plaintiffs brought this action as "security owner[s] of BurgerFi." Compl. ¶ 2 (capitalization modified). Claims for disgorgement of short-swing profits under Section 16(b) may be filed either by "the issuer [of the security], or by the owner of any security of the issuer." Morrison v. Eminence Partners II, L.P., 714 F. App'x 14, 16 (2d Cir. 2017) (citing 15 U.S.C. § 78p(b)). By March 17, 2025, any equity interest Shareholder Plaintiffs had in BurgerFi was extinguished or canceled, and Shareholder Plaintiffs have not established any other basis for a "continuing financial interest in the outcome of this litigation." [Gollust v. Mendell, 501 U.S. 115, 126 (1991).] Therefore, at the time of the May 19 Order, Shareholder Plaintiffs' claims were moot.

Id.

However, the district judge held that "the Court 'maintains jurisdiction to determine whether a substitute plaintiff would avoid' mootness in the action." Id. (quoting Klein, 906 F.3d

at 218). She therefore allowed the parties to brief whether the Trustee should be substituted for the Shareholder Plaintiffs under Rule 17, see id. at 8-9, which states in pertinent part that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to . . . be substituted into the action," Fed. R. Civ. P. 17(a)(3). Accordingly, the Shareholder Plaintiffs filed the instant motion.

## II. LEGAL STANDARDS

A court "has the constitutional power to substitute a real party in interest to avoid mooting a case and Rule 17(a)(3) is an appropriate procedural mechanism for doing so." Klein, 906 F.3d at 219. Further, "Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants," Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997), "and 'where substitution of the real party in interest is necessary to avoid injustice,'" In re Bed Bath & Beyond Inc. Section 16(B) Litig., 2024 WL 2958743, at *6 (S.D.N.Y. June 11, 2024) (quoting Advanced Magnetics, 106 F.3d at 20). But "[e]ven if a proposed substitution meets these requirements, it should be denied if it is being proposed 'in bad faith,'" or "if doing so would otherwise result in 'unfairness to defendants.'" Klein, 906 F.3d at 226 (quoting Advanced Magnetics, 106 F.3d at 21).

## III. DISCUSSION

The Second Circuit's decision in Klein compels granting the instant motion.

In Klein, the plaintiff-shareholder brought a § 16(b) action on behalf of Qlik Technologies, Inc. See 906 F.3d at 218. While the litigation was pending, Qlik was taken private, which extinguished the plaintiff-shareholder's stake in the company. See id. The district

court rebuffed the plaintiff-shareholder's motion to substitute Qlik itself as plaintiff under Rule 17, "conclud[ing] that, once [he] was bought out, it lost all power to do anything but declare that it no longer had subject-matter jurisdiction." Id. at 220. The Second Circuit reversed, holding that

> Rule 17 contemplates that federal courts maintain jurisdiction over an action in which a representative plaintiff has lost her stake long enough to determine whether the concrete adverseness that existed at the outset of the case can be maintained without undue prejudice to defendants. Only if the answer is "no" is there no longer a live case in front of the court. And only then must a court dismiss the matter for want of jurisdiction.

Id. at 223.

Klein ruled that the plaintiff-shareholder's Rule 17 motion should have been granted. It held that "Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants." Id. at 218. It determined that the plaintiff-shareholder met these requirements. First, it observed that the plaintiff-shareholder's "proposed substitution of Qlik would alter none of the factual allegations of the complaint." Id. at 226. Second, it found "no evidence that either Qlik or Klein [the plaintiff-shareholder] are acting or have acted in bad faith. As far as the record show[ed], both . . . honestly expected . . . that Klein would litigate on Qlik's behalf until judgment. Circumstances intervened." Id. Third, the Second Circuit found that there was "no unfairness to [the defendants] in allowing substitution." Id. "No doubt it is unfortunate for them that Rule 17(a)(3) is the only thing keeping them in court. Unfortunate, but not unfair." Id. Klein also held that "substituting Qlik here [was] necessary to avoid injustice because a rule disallowing substitution in these circumstances would contravene the purpose of shareholder derivative suits" by forcing Qlik to forfeit the § 16(b) claim, which had "traveled beyond the limitations period" during the litigation. Id. at 226-27.

Klein thus squarely rejects defendants' first argument: namely, that substitution cannot be granted at all because the Shareholder Plaintiffs' claims became moot. See Opp. at 14-16. Moreover, each of the considerations identified in Klein with respect to the issue of substitution favor the Shareholder Plaintiffs here.

First, the Shareholder Plaintiffs state that "the Trustee as the proposed substituted plaintiff has agreed to continue th[is] case . . . without proposing any amendments to the allegations," and they thus assert "that no amendments other than to the caption of this case are required." Mem. at 9, 10; see Dooley Decl. ¶ 10 ("No changes to the pleadings or case filings are proposed or intended."). Defendants claim that this assertion "does not withstand scrutiny." Opp. at 21. They take the position that substitution of the Trustee would amount to "wholesale substitution of one jurisdictional theory for another — one requiring new factual allegations, new legal argument, and new supporting documentation." Id. But defendants do not give good reasons why additional allegations are required. They do not contest that under "Section 541 of the Bankruptcy Code, 11 U.S.C. § 541, the corporate debtor in possession is properly substituted for an individual shareholder as the plaintiff in a [§ 16(b)] action because Section 541 renders all of the debtor's causes of action the exclusive property of the bankruptcy estate." iXL Enters., Inc. v. GE Cap. Corp., 167 F. App'x 824, 826 (2d Cir. 2006). Further, the Second Circuit emphasizes that "Rule 17(a) substitution of plaintiffs should be liberally allowed when the change . . . in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, 106 F.3d at 20. Here, the allegations in the complaint as to the events giving rise to § 16(b) liability and the participants in the challenged conduct — i.e., as to defendants' alleged short-swing profiteering — will remain unchanged after substitution. While

the status of the plaintiff will change (from shareholder to trustee of the issuer), a similar change of status was found to be no bar to substitution in Klein.

Defendants also make much of the fact that substitution would "redirect any recovery" from "the company's former equity holders" to "creditors," a change they claim "fundamentally alter[s] the nature and purpose of this lawsuit in a manner Rule 17(a)(3) was not designed to accommodate." Opp. at 22. The logic behind this argument is difficult to fathom, given that § 16(b) specifically contemplates that the issuer of a stock — in addition to a shareholder — is permitted to bring an action to recover short-swing profits. That the issuer may be in the hands of a trustee is of no practical consequence insofar as the "nature and purpose" of a § 16(b) action brought by an issuer or a trustee is identical to the "nature and purpose" of a § 16(b) action brought by a shareholder: to recover short-swing profits based on allegations that the defendants improperly traded their shares. And, once again, essentially the same circumstances existed in Klein, which found no bar to substitution.

Second, despite defendants' arguments to the contrary, we discern no "bad faith," see Opp. 18-20, on the Shareholder Plaintiffs' part. Defendants take the Shareholder Plaintiffs to task for failing to "acknowledge[e] that the cancellation of BurgerFi's equity interests had rendered this action moot" when they first moved to substitute the Trustee. Opp. at 19. Defendants are right that the Shareholder Plaintiffs made no mention of "the mootness problem" in their original motion. Id. But the facts underlying "the mootness problem" were equally available when the Shareholder Plaintiffs' first motion to substitute was filed. The motion clearly communicated the most critical information to the Court: that the Shareholder Plaintiffs could not continue to prosecute this action.

Defendants also ask us to impute bad faith to the Shareholder Plaintiffs because they filed a motion for summary judgment "after" after their "equity interests" were "extinguish[ed]." See Opp. at 19. But the Shareholder Plaintiffs' stake in Burger was not extinguished until March 17, 2025, see Order on Reconsideration at 2-3, five months after they filed their motion for summary judgment, see Notice of Motion for Summary Judgment, filed Oct. 2, 2024 (Docket # 71).

Defendants fault the Shareholder Plaintiffs for not filing a proposed amended complaint with the instant motion. They invoke In re Bed Bath & Beyond Inc. for the proposition that the omission of a proposed amended complaint is "indicative of bad faith" in the Rule 17 context. Opp. at 20. But in In re Bed Bath & Beyond Inc., the plaintiff acted inconsistently before the district court: it refused to state whether it sought to "alter the facts on which this case is brought" if the substitution occurred and also failed to provide a proposed amended complaint. 2024 WL 2958743, at *7. It was in this context — essentially, a determination that the plaintiff was obligated to move under Rule 15 — that In re Bed Bath & Beyond Inc. found bad faith on the plaintiff's part. Id. Defendants cite to no authority holding that an amended complaint is required to support a motion under Rule 17. Certainly, In re Bed Bath & Beyond Inc. did not so hold. Rather, the court could not find that a party "acted in good faith" when it asserted both "that its substitution would be merely formal" and "that it will seek leave to amend its pleadings in an unspecified manner." Id. (citation and internal quotation marks omitted). Here, by contrast, the Trustee makes no such conflicting representations. Of course, Klein too imposed no requirement that an amended complaint be filed given that the substitution did not otherwise call for changing the substance of the complaint. The Court has examined the complaint in this case and sees no need for the filing of an amended complaint (as opposed to a change in caption) to fulfill the requirements of Rule 8(a) inasmuch as the complaint already describes the grounds for

the Court's statutory jurisdiction and shows why the acts alleged to have been committed by defendants would entitle the Trustee to the relief demanded (once the Trustee is substituted).

Third, we discern no "unfairness" to defendants in allowing substitution beyond the fact that defendants must continue to litigate this case, which Klein explicitly held was insufficient to justify denying substitution. See 906 F.3d at 226. Defendants assert substitution of the Trustee "would effectively require starting over," or at least require more discovery, claiming that they would need "to probe the basis for [the Trustee's] authority," and "to examine the bankruptcy proceedings and plan documents that would now form the foundation of his standing theory." Opp. at 26. Whatever examination of existing bankruptcy court documents may be required hardly amounts to "starting over," however.

Fourth, as in Klein, substitution of the Trustee would avoid injustice by preventing forfeiture of § 16(b) claims that have "traveled beyond the limitations period" over the course of this litigation. 906 F.3d at 226. Defendants say this is a problem of the Trustee's own making, observing that "neither BurgerFi, nor any subsequently appointed Liquidating Trustee, took any action to protect or preserve" the claims. Opp. at 25. But the Plaintiff Shareholders had already preserved the claims by filing suit in the first place. Defendants' citation to Frank v. Wells Fargo Bank, N.A., 620 F. Supp. 3d 1024 (C.D. Cal. 2022), does not advance their arguments. Frank states only that "the possibility that [a] claim might now be time barred, alone, without satisfaction of the other requirements of Rule 17(a)(3), is not enough to justify relief." Id. at 1029. Here, we have already determined that the Shareholder Plaintiffs satisfy the requirements of Rule 17 as articulated in Klein. As for In re Bed Bath & Beyond Inc., the court declined to "conclude that granting substitution is necessary to avoid injustice" in that case because nothing precluded the issuer "from filing its own complaint." 2024 WL 2958743, at *7 (internal

quotation marks omitted). Here, the Trustee is precluded from bringing another suit by the statute of limitations.

Defendants also contend that the Shareholder Plaintiffs "have never demonstrated that they held BurgerFi securities at the time th[is] action was filed." Opp. at 17. But the complaint alleges that the Shareholder Plaintiffs held securities in Burger Fi. See Compl. ¶ 2. To the extent defendants have reason to question this allegation, "[c]hallenges to a plaintiff's standing to bring a claim are properly addressed under Rule 12(b)(1)." Evolution Fast Food One, LP v. HVFG, LLC, 720 F. Supp. 3d 251, 259-60 (S.D.N.Y. 2024) (citing All. for Env't Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006)). Defendants had an opportunity to take discovery on the question of standing, and had defendants proffered evidence that contradicted the complaint's ownership allegation in a Rule 12(b)(1) motion, that proffer would certainly have "trigger[ed] the plaintiff[s'] obligation to come forward with evidence of their own to controvert that presented by the defendant[s]." Yang v. Feilos Holding LLC, 2026 WL 1735186, at *2 (S.D.N.Y. June 16, 2026) (citation and internal quotation marks omitted). But defendants in this case never brought a Rule 12(b)(1) motion. And, contrary to defendants' argument, see Opp. at 17, it is of no moment that the Shareholder Plaintiffs repeated their allegation as to standing when they moved for summary judgment.

Lastly, defendants at times contend that the standard for deciding this motion is whether the Shareholder Plaintiffs made "an honest mistake," Opp. at 25 — a standard arguably not met here. However, the "honest mistake" standard was squarely rejected in Klein. See Klein, 906 F.3d at 227 ("[A] plaintiff's honest mistake is not a precondition for granting a Rule 17(a)(3) motion."). Instead, we are bound to grant the instant motion "so long as doing so does not

change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants." Id. at 218. These requirements have been met.

CONCLUSION

For the reasons given above, the Shareholder Plaintiffs' motion to substitute (Docket # 99) is hereby granted. The Clerk is directed to change the caption of this matter to substitute "Daniel F. Dooley as Liquidating Trustee for BurgerFi International, Inc." for the current plaintiffs (Dennis J. Donoghue and Mark Rubenstein).

SO ORDERED.

Dated: August 24, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge